UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAVID L. THORPE, | ) |
|       Plaintiff | ) ) ) |
| v. | ) ) Cause No. 1:19-CV-2988 RLM-MPB |
| INDIANA ELECTRICAL WORKERS PENSION TRUST FUND, I.B.E.W., | ) ) ) ) |
|       Defendant | ) |

<u>OPINION AND ORDER</u>

This dispute arises out of a disagreement regarding the payment of retirement benefits from a multi-employer pension plan governed by ERISA. David L. Thorpe brings a claim for pension benefits and rights under the Employee Retirement Income Security Act of 1974 against the Indiana Electrical Workers Pension Trust Fund, I.B.E.W. The parties' cross motions for summary judgment are before the court. For the reasons set forth below, the court GRANTS the plaintiff's motion for summary judgment and DENIES the defendant's motion for summary judgment.

I. BACKGROUND

These are the undisputed facts. Mr. Thorpe has been a participant in the defendant pension fund since 1978. Mr. Thorpe and his wife, Kathleen Thorpe, divorced in 2006. During their divorce proceedings, a court entered a qualified

domestic relations order (QDRO) that divided Mr. Thorpe's pension benefits between him and Ms. Thorpe. The order said that it was assigning "a portion of Participant's benefits under the IBEW Pension Trust Fund (the Plan) to Alternate Payee in recognition of the existence of Alternate Payee's marital rights in Participants' vested defined benefit pension plan." Mr. Thorpe is the plan participant, and Ms. Thorpe is the alternate payee. The order went on to say:

> If Participant and Alternate Payee survive until Participant's Earliest Retirement Age, Alternate Payee is assigned an amount equal to the actuarial equivalent of sixty percent (60%) of Participant's monthly accrued benefit determined as of November 30, 2004. Benefits accruing to the Participant as compensation for services rendered after November 30, 2004 are not subject to this order. Alternate Payee shall have the right to elect to receive benefit payments under the Plan on or after the date on which Participant attains the Earliest Retirement age (but not taking into account the present value of any employer subsidy for early retirement). Alternate Payee shall have the right to elect any form of benefits permitted by the Plan as of the date Alternate Payee elects to begin receiving benefits as if such Alternate Payee were a participant in the Plan; provided, however, Alternate Payee is prohibited from selecting a qualified joint and survivor annuity with respect to any subsequent spouse of Alternate Payee.

The order said that all benefits payable under the plan were payable to Mr. Thorpe except those payable to Ms. Thorpe, and that Mr. Thorpe had sole discretion to determine how to receive those benefits, subject only to the plan's requirements. It also said:

> In the event Participant elects to retire under the Plan prior to normal retirement age and by reason of such early retirement the Plan provides an early retirement subsidy, then Alternate Payee's benefit shall be recomputed to provide Alternate Payee with proportionate part of such subsidy on the percentage of the accrued

2

> benefit to Alternate Payee hereunder and the Participant's total accrued benefit at the time of retirement.

A copy of the order was mailed to the plan administrator for the fund's board of trustees.

Mr. and Ms. Thorpe survived past Mr. Thorpe's early retirement age. Mr. Thorpe elected to retire in May 2008. He was 55 years old and had over 30 years of service, so he was eligible for early retirement and an early retirement subsidy. The fund's administrative manager provided Mr. Thorpe with a benefit calculation. Mr. Thorpe could receive a single life annuity of $3,939.98 per month, or a single life annuity with a 10-year certain option of $3,847.00 per month. Mr. Thorpe selected the 10-year certain option. Both parties agree that the fund's records acknowledged the existence of Mr. Thorpe's qualified domestic relations order.

The parties also agree that Mr. Thorpe later sought confirmation that his benefit calculation was correct. Mr. Thorpe alleges that he called the fund office to ask specifically whether the benefit calculation it had provided him took the domestic relations order into account. The fund asked its actuarial service to calculate Mr. Thorpe's benefits pursuant to the order. The actuarial service sent a calculation to Carolyn Lyons at the fund's administrative office that said Ms. Thorpe was entitled to either $1,988.59 per month or $1,941.86 per month, depending on whether she selected a 5- or 10-year certain annuity. The service said that Mr. Thorpe's benefit should be reduced accordingly, and that he was

3

entitled to $1,872.23 per month under the 10-year certain option. Ms. Lyons then consulted with the fund's counsel at the time, Frederick Dennerline. She wrote a note in Mr. Thorpe's file on July 24, 2008 that said, "Per Rick Dennerline. He read through the QDRO and it does NOT say that we have to segregate the money for the QDRO payable to Kathleen. Until she applies for the Benefit, he get[s] 100% of his benefit." The plan paid Mr. Thorpe $3,847 per month for ten years.

Ms. Thorpe applied for a benefit from the plan in April 2018. The fund's administrative staff contacted plan counsel, who in turn contacted the fund's actuarial service. The actuarial service prepared a report that said Ms. Thorpe was eligible for either $2,199.29 or $2,058.10 per month, depending on whether she selected a 5- or 10-year certain annuity. The actuary noted that this calculation didn't include a portion of Mr. Thorpe's early retirement benefit, and that if Ms. Thorpe had elected to receive benefits in 2008 when Mr. Thorpe elected to receive them, she would've been entitled to either $1,988.59 per month or $1,941.86 per month. The actuary also said that based on its calculations, Mr. Thorpe's accrued benefit should have been reduced to $1,872.23 per month, beginning May 1, 2008, with a 10-year certain option. It determined that Mr. Thorpe had been overpaid $236,972.40 without interest over the course of 120 months.

The fund sent Mr. Thorpe a draft letter through its counsel in April 2018 and a final letter in June 2018, both of which said Mr. Thorpe had been overpaid

4

since May 1, 2008. The letter said that Mr. Thorpe should have been receiving $1,872.23 per month, and that under the authority of Section 11.07 of the pension plan, the fund would offset the overpayment by withholding half of Mr. Thorpe's recalculated monthly pension payment per month. Mr. Thorpe would receive $936.12 per month. The fund says that the trustees relied on Section 11.07 of the 2014 Plan Document to make their determination.

Mr. Thorpe appealed the fund's determination and recoupment plan with the assistance of counsel in October 2018. The fund denied his appeal, and this suit followed.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In deciding whether a genuine issue of material fact exists, we accept the non-movant's evidence as true and draw all inferences in his favor. Id. at 255. The existence of an alleged factual dispute, by itself, won't defeat a summary judgment motion; "instead, the nonmovant must present definite, competent evidence in

5

rebuttal," Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); *see also* Fed. R. Civ. P. 56(e)(2).

### III. ANALYSIS

*A. Arbitrary and Capricious Review Under ERISA*

Mr. Thorpe claims that the fund's administrator improperly decided to withhold money from his pension to recoup ten years of payments. He asks the court to award him all past-due benefits – the money the fund has withheld since 2018 to recoup the alleged overpayment – and to order the fund to reinstate his monthly benefit to the amount the fund recalculated once Ms. Thorpe elected to receive her benefits. Both parties argue that they are entitled to summary judgment on Mr. Thorpe's claim.

Mr. Thorpe argues that the fund's decision was arbitrary and capricious as a matter of law because (1) the fund couldn't use Section 11.07 of the 2014 Plan Document to recoup its overpayment because that document didn't apply to him; (2) no overpayment occurred because the Application Committee reasonably interpreted the Plan in 2008; (3) the fund invokes an equitable remedy to recoup the alleged overpayment, but equities don't weigh in favor of

recoupment; and (4) laches and estoppel bar the fund from relief. He concludes that he is entitled to judgment in his favor.

The fund argues that Mr. Thorpe was overpaid because he received benefits to which he wasn't entitled – the portion of his pension benefits that were assigned to Ms. Thorpe under the QDRO. It argues that it had the duty and the right to recoup the overpayments Mr. Thorpe received, and that its recoupment decision was in accordance with the law and the plan documents.

The pension plan at issue is governed by the Employee Retirement Income Security Act and affords the administrator discretionary authority to interpret and apply the terms of the plan. Accordingly, the parties agree that the arbitrary and capricious standard of review applies to this dispute. Geiger v. Aetna Life Ins. Co., 845 F.3d 357, 362 (7th Cir. 2017). "A plan administrator's decision may not be deemed arbitrary and capricious so long as it is possible to offer a reasoned explanation, based on the evidence, for that decision." Id. (internal quotations omitted). Under this standard, the court only overturns a plan administrator's decision if it's downright unreasonable. Herman v. Cent. States, Se. & Sw. Areas Pension Fund, 423 F.3d 684, 692 (7th Cir. 2005). Although this standard allows deference to plan administrators, a plan administrator's decision is arbitrary and capricious if the decision "controvert[s] the plain meaning of a plan." Swaback v. Am. Info. Techs. Corp., 103 F.3d 535, 540 (7th Cir. 1996). The administrator must articulate an explanation that is satisfactory in light of the relevant facts; that is, an explanation that gives specific reasons

7

for the denial. Id. at 692-693. "The administrator of a pension fund does not act arbitrarily and capriciously when he changes a previous decision because the facts known to the plan have changed; '[p]ut simply, a reversal based on new information is not a non-uniform interpretation.'" Id. at 693 (*quoting* Militello v. Cent. States, Se. & Sw. Areas Pension Fund, 360 F.3d 681, 690 (7th Cir.)).

*B. The Fund's Decision to Recoup Funds by Offsetting Mr. Thorpe's Payments*

The fund first argues that Mr. Thorpe was overpaid. The court doesn't need to reach the issue of whether Mr. Thorpe was overpaid or by how much, because even if he received a greater share of his pension benefits than he was entitled to under the terms of the QDRO, the fund hasn't raised any authority that shows it has the power to recoup that overpayment. Because the plan documents that were relevant to Mr. Thorpe didn't empower the fund to recoup payments to Mr. Thorpe, its decision to recoup funds from Mr. Thorpe was arbitrary and capricious. Mr. Thorpe is entitled to summary judgment.

In administering a pension plan, the administrator must act "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). The pension plan must also provide for benefits in accordance with a QDRO, meaning that a QDRO essentially becomes part of the plan documents. See 29 U.S.C. § 1056(d)(3)(A) ("Each pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order."); Kennedy v. Plan Adm'r for DuPont Sav. &

8

Inv. Plan, 555 U.S. 285, 301-302 (2009). The Thorpes' QDRO explains that Mr. Thorpe is responsible for paying Ms. Thorpe any benefits that he receives under the plan that belong to her:

> All payments due to Alternate Payee shall be made directly to Alternate Payee by the Plan. However, Participant is designated a constructive trustee for any benefits under the Plan due to Alternate Payee and inadvertently or mistakenly paid to Participant. Participant is ordered to pay the benefit defined above directly to Alternate Payee within three days after receipt by Participant.

The clear terms of the plan documents, including the QDRO, don't allow the plan to recoup an alleged overpayment, and an administrator cannot ignore the plain meaning of plan documents. Swaback v. Am. Info. Techs. Corp., 103 F.3d 535, 540 (7th Cir. 1996). The plan argues that an ERISA plan should, like any contract, be interpreted based on its explicit terms and "the implicit ones needed to make the explicit terms effective." But the fund doesn't address the explicit terms in the QDRO that make Mr. Thorpe a trustee of any funds mistakenly paid to him instead of to Ms. Thorpe.

Next, the fund argues that it could recoup an overpayment from Mr. Thorpe under the terms of the 2014 Plan Document the fund was using. This argument ignores the terms of the QDRO designating Mr. Thorpe as a trustee. And even if the QDRO didn't have the constructive trust provision, the fund's argument fails because the 2014 Plan Document doesn't apply to Mr. Thorpe. The 2014 Plan Document contains more general recoupment language in Section

9

11.07, but the 2014 Plan Document's own terms make clear that it does not apply to Mr. Thorpe.

The fund argues as an initial matter that Mr. Thorpe didn't raise his argument about the applicability of the 2014 Plan Document during the administrative proceedings, so his argument is waived on review. It contends that Mr. Thorpe was required to exhaust not only his claims during administrative proceedings, but also all issues relating to his claims.

Courts favor exhaustion of plan remedies because the plan's review process may resolve disputes, clarify facts, and encourage the private resolution of internal employment disputes. Stark v. PPM Am., Inc., 354 F.3d 666, 671 (7th Cir. 2004) (internal citations omitted). The fund cites the circuit court's decision in Senese v. Chicago Area I.B. of T. Pension Fund for the proposition that an argument in an ERISA case that isn't presented in the pleadings or for administrative review is waived. 237 F.3d 819, 823 (7th Cir. 2001). The circuit court explicitly "decline[d] to explore the merits" of issue exhaustion in that case and instead found that the district court properly rejected the plaintiff's argument on other grounds.[1] Id. The fund also cites Dougherty v. Indiana Bell Telephone Co. for the proposition that the Seventh Circuit requires issue exhaustion. 440 F.3d 910, 919 (7th Cir. 2006). In that case, the circuit court held that the plaintiff hadn't exhausted her administrative remedies under an

---

[1] Counsel's mischaracterization of the circuit court's holding troubles the court.

10

ERISA-governed plan because the claims she raised in the administrative process were sickness benefit claims, and the claims she raised on review in federal court were job accident benefit claims. Id. Neither case establishes ERISA issue exhaustion in this circuit.

Every circuit court that has considered extending issue exhaustion to ERISA cases has declined to do so. Wolf v. Nat'l Shopmen Pension Fund, 728 F.2d 182, 186 (3d Cir. 1984) ("Section 502(a) of ERISA does not require either issue or theory exhaustion; it requires *only* claim exhaustion.") (emphasis in original); Wallace v. Oakwood Healthcare, Inc., 954 F.3d 879, 892, n.7 (6th Cir. 2020) ("[This Court has held that a claimant is not required to exhaust her issues because of the non-adversarial nature of ERISA proceedings.") (internal quotation omitted); Vaught v. Scottsdale Healthcare Corp. Health Plan, 546 F.3d 620, 632 (9th Cir. 2008) (declining to find an issue exhaustion requirement "[b]ecause ERISA and its implementing regulations create an inquisitorial, rather than adversarial process, and because the [explanation of benefits] does not notify a claimant that issue exhaustion is required[.]") (*citing* Sims v. Apfel, 530 U.S. 103, 107 (2000)); Forrester v. Metro. Life Ins. Co., 232 F. App'x 758, 761 (10th Cir. 2007) (holding that the circuit requires claim exhaustion in ERISA cases, "[b]ut we have not extended this rule to bar subsidiary arguments urged on judicial review in support of a claim itself fully exhausted in the administrative process (i.e., issue exhaustion)."). Our court of appeals hasn't extended the rule

for claim exhaustion to issue exhaustion, and neither will this court. Mr. Thorpe can raise the issue of whether the 2014 Plan Document applied to him.

The fund argues that even if issue exhaustion isn't required, the 2014 Plan Document controlled Mr. Thorpe's claim because Mr. Thorpe "implicitly conceded" during his administrative review that the 2016 Plan Document controlled. As the court already stated, Mr. Thorpe wasn't required to exhaust all issues in his administrative review, so his decision to raise the argument at this stage rather than during administrative review doesn't imply a concession. The fund further says that a plan can be amended before benefits vest, and Mr. Thorpe didn't have a right to Ms. Thorpe's benefits under the QDRO, so the benefits at issue hadn't vested and the 2008 Plan Document couldn't have applied to them. The fund doesn't cite any controlling authority that says one part of a benefit under an ERISA-governed plan can vest while part remains unvested, so this argument doesn't create a genuine dispute of fact. Mr. Thorpe retired in 2008, and based on the undisputed facts, that is the year his benefits vested.

Next, the fund argues that the preamble to the 2014 Plan Document doesn't prevent the plan from applying new provisions to Mr. Thorpe. The preamble says, in relevant part:

> The Pension Plan was subsequently amended, and effective on July 1, 1976, July 1, 1984, July 1, 1989, July 1, 2000 and July 1, 2009. Effective July 1, 2014, the Trustees adopt this amended and restated Plan as set forth herein. Except as specifically provided herein, the provisions of this amended and restated Plan shall apply

12

> only to those Participants who work (1) or more Hours of Service on or after July 1, 2014.

[Doc. No. 34, p. 6]. It is undisputed that Mr. Thorpe didn't work one or more hours on or after July 1, 2014. The fund doesn't point to anything in Section 11.07, Article XI, or anywhere else in the 2014 Plan Document that provides that Section 11.07 applies to plan participants who didn't work on or after July 1, 2014. The fund explains how, under a plain reading of the preamble, it's clear that the "administrative" aspects of the 2014 Plan Document, including those related to recoupment, apply to Mr. Thorpe. But a plain reading of the 2014 Plan Document dictates that Section 11.07 doesn't apply to Mr. Thorpe and no reasonable juror could conclude otherwise. Cheney v. Standard Ins. Co., 831 F.3d 445, 450 (7th Cir. 2016) ("Finally, we apply federal common law to interpret the policy terms and draw on general principles of contract interpretation, at least to the extent that those principles are consistent with ERISA.") (internal quotations omitted); Schultz v. Aviall, Inc. Long Term Disability Plan, 670 F.3d 834, 838 (7th Cir. 2012) ("Plan language is given its plain and ordinary meaning, and the plan must be read as a whole, considering separate provisions in light of one another and in the context of the entire agreement."). Because the 2014 Plan Document doesn't apply to Mr. Thorpe, the fund can't rely on 2014 provisions; to do so would be arbitrary and capricious.

Third, the fund argues that even if the 2000 Plan Document controlled, recoupment was reasonable. It cites the Internal Revenue Code's requirement

that pension benefits be distributed in accordance with the pension plan. The fund concludes that when the IRS's procedures and the preamble to the 2000 Plan Document are read together, "[I]t is clear that the Plan's intent and purpose is to only pay those benefits which are provided for in Plan documents." The fund's intention not to overpay plan participants doesn't establish that its decision to recoup an alleged overpayment from Mr. Thorpe was reasonable as a matter of law, particularly when the cited authority is read in combination with the constructive trust provision of the QDRO, as well as other provisions that contemplated recoupment, discussed later.

Relatedly, the fund argues that recoupment was reasonable because ERISA authorizes any plan to engage in self-help recoupment. See Northcutt v. Gen. Motors Hourly-Rate Emps. Pension Plan, 467 F.3d 1031 (7th Cir. 2006). The holding of Northcutt was not so broad. In Northcutt, the court held that ERISA doesn't categorically preclude contractual agreements to offset future benefits. Id. Recoupment was allowed because the plan included provisions that expressly allowed for recoupment and those provisions did not conflict with the structure and purpose of ERISA's judicial remedies. Id. at 1034-1038 (interpreting ERISA § 502(a), 29 U.S.C. § 1132(a)). Under Northcutt, a plan may enforce its recoupment provisions if it has any, but the plan doesn't have a free-standing right to recoupment, as the fund suggests.

Fourth, the fund argues that the plan administrators have discretion under the 2000 Plan Document to recoup the alleged overpayment. It cites

14

Section 11.07 of the 2000 Plan Document, which says in part: "The Trustees may recover any payments made to a Participant, Beneficiary or other payee under circumstances where it is determined that such Participant, Beneficiary or payee has committed fraud in obtaining benefits from the Fund." [Doc. No. 34, p. 347]. The fund argues that "that section does not limit [the authority to recover payments] to only those instances where fraud occurred." No reasonable juror could conclude that under a plain reading of Section 11.07 of the 2000 Plan Document, the fund can recover for any other reason than fraud. Furthermore, ERISA plans are to be read so that "[a]ll language of a plan should be given effect without rendering any terms superfluous." Schultz v. Aviall, Inc. Long Term Disability Plan, 670 F.3d 834, 838 (7th Cir. 2012). To read a general power to recoup into the plan would render Section 11.07 superfluous.

Fifth, the fund argues that it has "a duty to attempt to recover the overpayment and return that amount to the trust fund." The only controlling authority the fund cites is the Supreme Court's explanation that "ERISA clearly assumes that trustees will act to ensure that a plan receives all funds to which it is entitled, so that those funds can be used on behalf of participants and beneficiaries[.]" Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc., 472 U.S. 559, 571-572 (1985). The Court wasn't discussing a plan trustee's ability or authority to recoup overpaid funds in Central States v. Central Transport. Further, nothing in that case persuades the court that the fund's duty to act in the interest of its participants implies authority to recoup payments,

especially in instances where a QDRO provision creates a constructive trust. The fund also cites a nonbinding case for the proposition that "specific recoupment language" in the plan document isn't necessary. See Pilger v. Sweeney, 725 F.3d 922, 926 (8th Cir. 2013) (finding that specific recoupment language isn't necessary when a plan document contains "broad language" granting a pension plan "discretion to take remedial action."). The fund doesn't cite any language giving it discretion to take remedial action.

Finally, the fund argues that Mr. Thorpe can't show that he has a "right" to a continuing benefit without offset since he was never entitled to receive benefits assigned to Ms. Thorpe. Even if that is correct, the QDRO's terms clearly establish responsibility for any overpaid benefit that needs to be offset; Mr. Thorpe is the one who must hold in trust and disburse benefits that belonged to Ms. Thorpe but were mistakenly paid to him. Mr. Thorpe argues in his supplemental brief that to hold otherwise would mean the plan could recoup any overpayment, and so could Ms. Thorpe, making him liable to both parties for the same money. The fund responds that the QDRO constructive trust provision only applies to benefits that are "due" to Ms. Thorpe, and none were due to her until she elected to receive benefits. On the one hand, Mr. Thorpe might be doubly liable if the funds were due to Ms. Thorpe and he was required to hold them in trust. On the other hand, if Ms. Thorpe's assigned benefits weren't due to her until she elected for benefits, the fund still hasn't shown how it had the authority to engage in self-help that was not explicitly or implicitly authorized by the plan

16

documents. In either case, allowing the fund to recoup alleged overpayments would contradict plan documents.

IV. CONCLUSION

Despite the broad discretion given to plan administrators under ERISA, a plan administrator's decision that controverts the plain meaning of a plan is arbitrary and capricious, Swaback v. Am. Info. Techs. Corp., 103 F.3d 535, 540 (7th Cir. 1996), and so is a decision based on documents that are irrelevant to the question at hand. See Speciale v. Blue Cross & Blue Shield Ass'n, 538 F.3d 615, 621 (7th Cir. 2008). The fund either relies on the 2014 Plan Documents, which are irrelevant to Mr. Thorpe, or interprets the 2000 Plan Documents contrary to their plain meaning. The fund's decision to recoup funds was arbitrary and capricious, so the court GRANTS Mr. Thorpe's motion for summary judgment [Doc. No. 33] and DENIES the fund's cross-motion for summary judgment [Doc. No. 36]. The court ORDERS defendant to pay Mr. Thorpe all benefits that it withheld since August 1, 2018 and ORDERS defendant to reinstate Mr. Thorpe's monthly payments of $1,872.23 per month.

SO ORDERED.

ENTERED:  September 7, 2021

　　　　　　　　　　　　　　　　　　　/s/ Robert L. Miller, Jr.
　　　　　　　　　　　　　　　　　　Judge, United States District Court

17

Distribution: all electronically
Registered counsel of record